BIDACHE, INC., a Wyoming corporation, Appellant (Defendant/Third Party Plaintiff),

v.

Henry MARTIN and Johanna Miller, Appellees (Plaintiffs),

and

GEK Partnership, a Wyoming partnership; and Don Gronberg and Sue Gronberg, husband and wife, Appellees (Third Party Defendants).

No. 94–210.

Supreme Court of Wyoming.

July 21, 1995.

Gregory C. Dyekman and Brandin Hay of Dray, Madison & Thomson, Cheyenne, Frank Hess, Jackson, for appellant.

Floyd R. King of King & King, Jackson, for appellees Martin and Miller.

William P. Schwartz of Ranck & Schwartz, Jackson, for appellees GEK and Gronbergs.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

The issue to be decided by this case concerns whether a right of first refusal on a commercial property was properly exercised. GEK Partnership, the holder of the right, was granted summary judgment by the trial court; and Bidache, Inc., the original offeror on the property, appeals.

We affirm.

Bidache raises a single issue for our consideration:

Did the trial court err in awarding GEK specific performance of its option to purchase Martin and Miller's Jackson, Wy property?

GEK responds with:

Did the district court properly conclude that the undisputed material facts entitle GEK to summary judgment on Bidache's third-party complaint?

Appellees, Henry Martin and Johanna Miller (Martin and Miller), the owners of the disputed property, state the issue as:

Did the trial court err in granting summary judgment to GEK Partnership, Don Gronberg and Sue Gronberg and in denying the summary judgment of appellant, Bidache, Inc.?

### FACTS

In 1986, Don and Sue Gronberg entered into a lease agreement with Martin and Miller covering certain commercial property in the town of Jackson. The lease granted the Gronbergs a right of first refusal:

4. *RIGHT OF FIRST REFUSAL.* Lessors [Martin and Miller] will not sell or otherwise dispose of the demised premises or any part thereof during the term of this lease or of any extension or renewal thereof until such time as Lessors shall have notified Lessees [the Gronbergs] in writing of the price, terms and conditions of any proposed sales; and *Lessors agree that Lessees shall thereupon have the prior right to purchase the demised premises at the same price and upon the same terms or conditions as are contained in any bona fide offer. Said right may be exercised at any time within thirty (30) days after Lessees' receipt of such written notice of said offer.* Lessees' right may be exercised by mailing at least two days before the date on which this option shall expire written notice of such exercise to Lessors by certified mail addressed to Lessors. *Upon exercise of the option Lessees shall have a period of thirty (30) days thereafter before being obligated to make payment or accept title to the premises unless by the terms and conditions of said offer a period of more than thirty (30) days is specified for the clos-ing, in which case Lessees shall have such longer period.*

(Emphasis added.)

In October of 1992, Bidache made an offer for the property. Martin and Miller then notified the Gronbergs of the offer pursuant to the right of first refusal clause in the lease agreement. The Gronbergs received notice of the offer on October 13, 1992. On November 6, 1992, the Gronbergs, in compliance with the lease, notified Martin and Miller, in writing, that they were exercising their right of first refusal. Also, sometime in December of 1992, the Gronbergs formed a partnership, GEK, for the purpose of purchasing the property.

According to the terms of Bidache's offer, closing was to occur on or before December 16, 1992. That did not happen, apparently because Martin and Miller's attorney had not prepared the necessary documents. The closing date was postponed until January 14, 1993 and then again to February 5, 1993; both of those dates came and went without closing occurring.

At that time, Bidache asserted that Martin and Miller had to sell the property to it because GEK had failed to comply with the offer's requirements. Martin and Miller refused to close the transaction with GEK and filed a quiet title action against Bidache to resolve the dispute. Bidache then filed a third-party complaint against GEK and the Gronbergs.

Both Bidache and GEK moved for summary judgment which the district court granted in favor of GEK. Bidache has timely appealed.

### STANDARD OF REVIEW

In reviewing a grant of a motion for summary judgment, we follow our familiar standard of review:

"Summary judgment is appropriate when no genuine issue of material fact exists and when the prevailing party is entitled to have a judgment as a matter of law." *Sandstrom v. Sandstrom,* 884 P.2d 968, 971 (Wyo.1994). *See also* W.R.C.P. 56(c).

A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist.

*Thunder Hawk By and Through Jensen v. Union Pacific Railroad Company,* 844 P.2d 1045, 1047 (Wyo.1992) (citation omitted). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Kilmer v. Citicorp Mortgage, Inc.,* 860 P.2d 1165, 1167 (Wyo.1993). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Thunder Hawk By and Through Jensen,* 844 P.2d at 1047.

*Adkins v. Lawson,* 892 P.2d 128, 130 (Wyo. 1995). We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Moncrief v. Louisiana Land & Exploration Co.,* 861 P.2d 516, 523 (Wyo.1993) (*quoting Deisch v. Jay,* 790 P.2d 1273, 1278 (Wyo.1990)).

### DISCUSSION

■ Bidache, relying on the requirement in the right of first refusal that GEK had the right to purchase the property "at the same price and upon the same terms or conditions" as were contained in its offer, contends that GEK's failure to close by December 16, 1992 terminated the right of first refusal. Arguing that strict compliance is required, Bidache alleges that GEK went beyond the terms of the offer by agreeing to close at a later date. From that Bidache concludes GEK no longer had a valid contract with Martin and Miller; instead, Bidache did based on its offer.

■ A right of first refusal, sometimes known as a presumptive right, "gives a privilege to purchase on a condition precedent which is the formulated desire of the owner to sell, and frequently the holder of the right must purchase at a price established by negotiations with a third party." *Chapman v. Mutual Life Ins. of Co.,* 800 P.2d 1147, 1150 (Wyo.1990) (*quoting Hartnett v. Jones,* 629 P.2d 1357, 1362 n. 1 (Wyo.1981)). Once the condition precedent—the owner's intent to sell—is met, the right of first refusal ripens into an option and, of course, the law relating to options contracts applies. *Chapman,* 800 P.2d at 1150 (*citing Myers v. Lovetinsky,* 189 N.W.2d 571, 576 (Iowa 1971)).

"An option to purchase property is a contract wherein the owner, in return for a valuable consideration, agrees with another person that the latter shall have the privilege of buying property within a specified time on terms and conditions expressed in the option." *Crockett v. Lowther,* 549 P.2d 303, 308 (Wyo.1976).

> "[O]ptions are to be strictly construed and where the option is to be exercised within a stated time and in a particular manner, that must be done exactly as prescribed unless, perhaps, there is some intervening circumstance which the law recognizes as one of the impossibilities which make failure of compliance an exception to the rule."

*Crockett,* 549 P.2d at 310 (*quoting Covey v. Covey's Little America, Inc.,* 378 P.2d 506, 517 (Wyo.1963)); *see also Smith v. Hevro Realty Corp.,* 199 Conn. 330, 507 A.2d 980 (1986) (where right of first refusal required compliance with terms of offer; failure to do so renders option invalid).

The district court found that GEK's failure to close was excused because it was due to circumstances beyond its control; *i.e.,* the failure of Martin and Miller's attorney to timely prepare the necessary documentation. We need not decide if that circumstance was such to justify noncompliance, since we conclude that GEK did, in fact, comply with the terms of the offer.

The right of first refusal required GEK to purchase the property at the price and upon

the same terms and conditions as were contained in Bidache's offer. That offer provided that closing was to occur "on November 10, 1992, *or as otherwise mutually agreed between the parties* * * *." (Emphasis added.) The agreement between GEK and Martin and Miller to extend closing was clearly within the terms authorized by Bidache's offer.

Bidache counters that the agreement to extend the closing was ineffective under this clause because Bidache did not so agree. Bidache's argument is premised upon its belief that it was, somehow, a party to the contract between Martin and Miller and GEK. This ignores basic contract law. Bidache's offer to purchase the property never became a legally binding contract. So long as GEK held a valid right of first refusal, acceptance of Bidache's offer was dependant on a condition precedent—GEK failing to exercise its right. Once GEK exercised that right, a contract was created between it and Martin and Miller. Bidache was not, and never became, a party to that contract. When the right of first refusal was exercised, Bidache's offer remained just that—an offer. If GEK had failed to properly exercise its option, then Bidache would have had a contract with Martin and Miller. *See Smith,* 507 A.2d at 987.

### CONCLUSION

GEK's right of first refusal required it to comply with all terms and conditions of Bidache's offer; it did so, therefore, summary judgment in its favor was appropriate.

Affirmed.